# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN SCOT NOEL,                                    )
                                                   )
                        Plaintiff,                 )
                                                   )
            vs.                                    )        Civil Action No. 3:22-cv-23
                                                   )        Judge D. Brooks Smith
STEPHEN JAMES MIKSICH, JR.; and                    )
TIMOTHY JAY CAMPOLONG, JR.,                         )
                                                   )
                        Defendants.                )

## MEMORANDUM and ORDER OF COURT

On November 15, 2020, a fight between *pro se* Plaintiff, Ryan Noel, and Defendants, Officers Stephen Miksich and Timothy Campolong, spilled out of a holding cell and into a hallway of the Altoona Police Department. Fists flew, shouts rang out, and ultimately, Noel caught an aggravated assault charge and Miksich and Campolong got dragged into a federal civil suit. All three concede that the altercation never should've occurred. Miksich speculated that he could've defused tensions if he'd been "a little bit calmer." (ECF No. 74-4 at 9). Campolong acknowledged that he threw the first punch after bumping his head against a wall, which he mistook for Noel striking him. (ECF No. 74-3 at 13). And Noel regretted his role, reflecting that he "should have just let [the officers] say what they said and that would have been it." (ECF No. 72-8 at 6). Whatever the benefits of hindsight, the three men find themselves opponents once again—this time on either side of the "v." Noel alleges

1

that Miksich and Campolong violated his civil rights. The officers have moved for summary judgment on all claims. For the following reason, their motion will be granted, in part, and denied, in part.

## I.    Factual Background

On November 15, 2020, police arrested Ryan Noel at a residence in Altoona, Pennsylvania. (ECF No. 71 ¶ 1). While being transported in a police cruiser, en route to the Altoona Police Department, Noel swallowed five grams of meth that officers had failed to detect during their initial search. (*Id.* ¶¶ 2–3). Hours later, alone in the City lockup and under the influence, Noel began shouting and pounding on his cell door. (*Id.* ¶ 8). Officer Miksich ordered Noel to stop, but he refused. (*Id.*).

Miksich then entered the cell, with Officer Campolong following behind him. (*Id.* ¶ 10; ECF No. 74-5 at 31; ECF No. 75-2 at 01:53–57). In an effort to calm Noel, Miksich placed his hands on Noel's shoulders and sat him on the cell's bench. (ECF No. 71 ¶ 10). Noel returned to his feet, but Campolong quickly forced him back onto the bench. (*Id.*). When Noel rose for a second time, Miksich and Campolong decided to handcuff him. (*Id.* ¶ 12). As they attempted to do so, however, Noel lunged at Miksich. (*Id.*). In response, Miksich backpedaled and pushed Noel away, which caused both Noel and Campolong to tumble over the bench, into the small space between it and the toilet. (*Id.* ¶ 13). As he fell, Campolong's head hit the cell wall. (ECF No. 74-3 at 12). He then struck Noel, mistaking the impact with the wall for

Noel's "punch[ing him] in the face." (ECF No. 74-5 at 5; ECF No. 75-2 at 02:18–24). A skirmish ensued, during which Campolong threw additional punches, (ECF No. 75-2 at 02:24–37), and Noel raised his arms, possibly to "defend himself," (ECF No. 40 at 4; ECF No. 74-1 ¶ 14), and attempted to swing back, (ECF No. 74-5 at 33; ECF No. 75-5 at 02:34–42).

Eventually, at Miksich's direction, other officers managed to extract Noel from the cell and carry him out into the hallway. (ECF No. 71 ¶ 15; ECF No. 75-2 at 02:37–45). They wrestled him onto his stomach and "scream[ed] give your arms, give me your hands, give me your hands." (ECF No. 74-4 at 6). But "with 4 officers on him" and his "arms . . . pinned underneath," Noel could not comply. (*Id.*). To overcome what he perceived as resistance, Campolong struck Noel in the back "about 5" times. (ECF No. 74-3 at 8).

With the situation spiraling, Miksich "yelled for everyone to stop." (ECF No. 74-4 at 6). To him, "it seemed like" the officers were "fighting each other." (*Id.*). He "told Campolong to move along because he was [in] a highly agitated state," and then worked with the remaining officers to cuff Noel and place him in a restraint chair. (*Id.*). About two hours later, officers removed Noel from the chair and transported him to Blair County Prison. (ECF No. 74-1 ¶ 17). At the prison, Nurse Suzanne Feathers performed a routine medical screening and documented "multiple red marks all over both [of Noel's] arms, both hands and some on his head." (ECF

3

No. 72-18 at 1, 3). As treatment, Noel received "ice" and "Ibuprofen." (ECF No. 72-7 at 39).

After the incident, Campolong "dr[e]w up a criminal complaint," (ECF No. 74-5 at 34), charging 21 counts ranging from aggravated assault to resisting arrest, (ECF No. 17-3 at 2–3). Noel ultimately pled guilty to "aggravated assault of Officer Campolong," (ECF No. 72-7 at 42), in violation of Pa. Cons. Stat. 18 § 2702(a)(3), (ECF No. 17-3 at 5). The other charges were either withdrawn or dismissed. (*Id.* at 5–7).

## II.    Procedural History

On February 15, 2022, while incarcerated at Blair County Prison, Noel filed a *pro se* Complaint against Campolong, Miksich, the Altoona Police Department, and Altoona City Hall. (ECF No. 4). Three months later, Defendants moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16). Noel conceded that he had nothing to support his claims against the Police Department or City Hall, so the Court dismissed them as parties. (ECF No. 40 at 6). As to Campolong and Miksich, the Court converted the motion to dismiss to one for summary judgment and denied it. (*Id.* at 14). That disposition, however, was without prejudice, allowing Campolong and Miksich the option to file a second motion for summary judgment "based on a more complete record." (*Id.* at 13). Defendants

exercised that option on March 7, 2025, (ECF No. 69), when they filed a new motion seeking summary judgment on Noel's five remaining claims.

### III.    Legal Standard

A Court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). In assessing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *See Matreale v. N.J. Dep't of Mil. & Veterans Affs.*, 487 F.3d 150, 152 (3d Cir. 2007). But where video evidence exists, the facts "depicted by the videotape" will control, and assertions that contradict the footage are to be ignored. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

### IV.    Analysis

Noel's Complaint contains five claims. The first four—brought pursuant to 42 U.S.C. Section 1983—allege violations of his Fourteenth Amendment due process rights based on: (1) excessive use of force during the incident at the Altoona Police Department; (2) failure to intervene to prevent the excessive use of force; (3)

5

inadequate medical care following the incident; and (4) the decision to place him in a restraint chair for two hours. The fifth claim alleges assault and battery under Pennsylvania state law. For the following reasons, the first and fifth claims must proceed to trial. Defendants are entitled to summary judgment as to the other three.

### a. Excessive Use of Force

Whether an exercise of force qualifies as "excessive" turns, in part, on the status of the person against whom that force is deployed. The Eighth Amendment protects convicted criminals from "cruel and unusual punishments." U.S. Const. amend. XIII. But "pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021). Their claims proceed under the Fourteenth Amendment's Due Process Clause, and to prevail, they "must show *only* that the force purposefully or knowingly used against [them] was objectively unreasonable." *Id.* Any such use of force "amount[s] to punishment of the detainee" and violates his constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Supreme Court has identified six, non-exhaustive factors that bear on the question of reasonableness:

> [(1)] the relationship between the need for the use of force and the amount of force used; [(2)] the extent of the plaintiff's injury; [(3)] any effort made by the officer to temper or to limit the amount of force; [(4)] the severity of the security problem at issue; [(5)] the threat reasonably perceived by the officer; and [(6)] whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

In its prior order on summary judgment, the Court applied these factors to Noel's case and concluded that a reasonable jury could find for him on his excessive force claim. (ECF No. 40 at 6–11). Its analysis involved a review of the video evidence and consideration of the parties' competing narratives. And though Defendants have now proffered additional evidence, none of it diminishes the durability of the initial ruling. A reasonable jury could still conclude that Defendants used excessive force against Noel for the same reasons enumerated in the previous order.

But Defendants insist that the question should never reach a jury because: (1) *Heck v. Humphrey* bars Noel's claim; (2) issue preclusion controls the outcome; and/or (3) qualified immunity shields them from liability. None of these arguments carry the day.

### i. *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486–87. This so-called "favorable termination rule," *Feliz v. Kintock Grp.*, 297 F. App'x 131, 136 (3d Cir. 2008), prevents a civil rights plaintiff from prevailing on a claim when his success depends on a finding that contravenes a prior conviction. In *Heck*, for example, a man convicted of voluntary manslaughter attempted to bring a Section 1983 claim against the attorneys who prosecuted him, alleging that they engaged in an unlawful investigation and destroyed exculpatory evidence that would have proved his innocence. *Heck*, 512 U.S. at 478–79. The Supreme Court refused to permit him to pursue this claim because, if successful, it would have "demonstrate[d] the invalidity of [an] outstanding criminal judgment against" him. *Id.* at 487. Defendants argue that the same logic bars Noel from bringing an excessive force claim against them because his success on that claim would undermine the validity of the aggravated assault charge he pled to.

But *Heck* does not categorically bar a plaintiff convicted of assaulting an officer from bringing an excessive force claim against that officer. *See Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008); *Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010); *Jacobs v. Bayha*, 616 F. App'x 507, 513 (3d Cir. 2015). The question is whether the "specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *Jacobs*, 616 F. App'x at 513. And "convictions for resisting arrest and assaulting officers" are not necessarily "inconsistent with a holding that the officers, during a lawful arrest, used excessive

8

(or unlawful) force in response to [a plaintiff's] own unlawful actions." *Lora-Pena*, 529 F.3d at 506. In fact, courts "have generally held that the mere fact of a conviction for assault or similar conviction arising out of the same incident does not automatically preclude recovery on an excessive force claim brought under § 1983." *Garrison*, 376 F. App'x at 278. In *Garrison*, for instance, the Third Circuit reversed a District Court's entry of summary judgment based on *Heck*'s favorable termination rule because, although the plaintiff had pled guilty to assaulting the arresting officer, that did "not automatically mean that there [was] no use of force that [the officer] could have used in response which could have risen to the level of unreasonable and excessive." *Id.* The same applies to Noel.

Defendants emphasize that aggravated assault under Pa. Cons. Stat. 18 § 2702(a)(3) is defined as "attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to [a police officer] *in the performance of a duty*." (emphasis added). As they see it, an officer performing a duty cannot simultaneously engage in the use of excessive force. Binding precedent compels a different conclusion. *See Lora-Pena*, 529 F.3d at 506 ("It is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest."). A reasonable jury could conclude both that Noel assaulted Officer Campolong and that Defendants employed excessive force when restraining Noel. Because neither premise contradicts the other, *Heck* is inapposite to the current case.

### ii. Issue Preclusion

Sounding in a similar register, Defendants also argue that issue preclusion prevents Noel from raising an excessive force claim. "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738). Pennsylvania law "give[s] preclusive effect to state-court judgments" and "precludes relitigation of an issue determined in a previous action" when:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Off. of Disciplinary Couns. v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005). As such, a criminal defendant's criminal conviction (like Noel's conviction for aggravated assault) "collaterally estops [the] defendant from denying his acts in a subsequent civil trial." *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996).

The upshot is that Noel may not argue that he did not assault Officer Campolong. But for the same reasons just discussed with respect to *Heck*, the assault conviction is not a bar to an excessive force claim. Two things can be true: (1) Noel

10

assaulted Officer Campolong; (2) Defendants used excessive force against Noel. Issue preclusion on the former does not resolve the latter.

### iii. Qualified Immunity

Defendants' attempt to invoke qualified immunity also fails. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To evaluate a defendant's invocation of qualified immunity at summary judgment, "a court must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232. A constitutional right is "clearly established" when "every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In making this determination, courts must "fram[e] the right in light of the specific context of the case" and draw "all reasonable inferences . . . in the nonmovant's favor." *Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023). They must then search for "closely analogous caselaw," though "a precise factual correspondence between the case at issue and a previous case" is not a prerequisite to finding a right clearly

established. *Id.* at 231–32 (citation modified). The question is whether precedent places the "question beyond debate." *Ashcroft*, 563 U.S. at 741. We place "the burden of persuasion at a summary judgment proceeding on the party asserting the affirmative defense of qualified immunity." *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). Defendants must, therefore, "show that there [is] no genuine dispute of material fact to refute their contention that they did not violate [the plaintiff's] constitutional rights . . . or show that reasonable officers could not have known that their conduct constituted such a violation when they engaged in it." *Id.*

To prevent analogy to caselaw—and thereby muddy the precedential waters—Defendants frame the right at issue here with preposterous precision, characterizing the question as "whether it is unconstitutional for a police officer to punch a pre-trial detainee multiple times when that detainee causes the officer to tumble into a cramped corner of a holding cell and throws punches at that officer and pleads guilty to aggravated assault of the officer." (ECF No. 70 at 17). While qualified immunity demands "specificity," *Mullenix v. Luna*, 577 U.S. 7, 13 (2015), the sort of pedantic granularity that Defendants muster would transform the doctrine into an impenetrable shield. No two cases will ever entail *exactly* the same facts. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."). Courts must frame rights in a manner that protects officials

from liability for actions taken on the "sometimes hazy border between excessive and acceptable force." *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006) (citation modified). This is achieved when officials are denied qualified immunity for conduct that they reasonably ought to have understood as unlawful. *See Halsey*, 750 F.3d at 295.

Third Circuit caselaw clearly establishes that "striking a physically restrained and nonthreatening" pre-trial detainee constitutes excessive force in violation of the Fourteenth Amendment. *Jacobs*, 8 F.4th at 197. Noel, of course, was not "physically restrained and nonthreatening" during the entirety of the incident at the Altoona Police Department; he pled guilty to aggravated assault, after all. But although "reasonable officers dealing with an undisputedly assaultive inmate could disagree as to whether force of the type used against [Noel] was excessive, such a legal conclusion in this case rests on a factual presumption that is inappropriate on summary judgment." *Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009). "A dispute of material fact exists as to [when Noel] ceased resisting." *Id.*

As the Court's prior order on summary judgment states, the available video footage "does not clearly show whether," during the altercation in the cell, Noel "is attempting to strike Defendant Campolong or raising his arms over his head to defend himself, but it is clear that Defendant Campolong repeatedly punches down on [Noel]." (ECF No. 40 at 4). The barrage of punches could certainly qualify as

excessive under the circumstances. As for what occurred in the hallway, Miksich's own testimony posits that the officers were "fighting each other" and that Noel was not resisting but rather unable to comply with their orders to give them his hands because he had "4 officers on him" and his "arms . . . pinned underneath." (ECF No. 74-4 at 6). Despite this, Campolong struck Noel about five times while in "a highly agitated state." (*Id.*). A jury could conclude that, at some point during this course of events, Noel ceased resisting, but Defendants continued to use a degree of force that qualified as excessive. In fact, this possibility is exactly what prompted the Third Circuit to reverse an award of qualified immunity in *Giles*. The plaintiff in that case pled guilty to assaulting a police officer, but the Third Circuit denied the officer qualified immunity on the plaintiff's excessive force claim because disputes of fact left open the possibility that the officer employed excessive force after the plaintiff had been subdued. *See Giles*, 571 F.3d at 327. The same rationale applies here.

### b. Failure to Intervene

Provided "there is a realistic and reasonable opportunity to intervene," "a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002). An officer who shirks this duty acts with "deliberate indifference," *Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012), *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024), the standard

applicable to both convicted prisoners and pretrial detainees, *see Burton v. Kindle*, 401 F. App'x 635, 637–38 (3d Cir. 2010). "[T]he duration of the incident is key to determining whether there was a reasonable opportunity" to intervene. *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020). An event that "lasts about fifteen minutes" or "unfolds in multiple stages" often at least raises a genuine issue of fact as to whether an officer had a realistic and reasonable opportunity to intervene. *Id.*; *see Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) ("Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury."). Sometimes, though, a case involves an incident so brief that only a clairvoyant officer could intercede to prevent it. *See Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (holding that an "incident's brevity . . . defeats [the plaintiff's] failure-to-intervene claim"). Under those circumstances, the officer is entitled to summary judgment. *See El*, 975 F.3d at 335–36. I conclude that those circumstances are present here.

Noel alleges that Officer Miksich failed to intervene and protect him from abuse. But while it is true that Miksich did not anticipate and avert the scuffle, the record demonstrates that he reacted reasonably and deescalated to the extent he could. About "45 seconds" elapsed "from the time [Campolong] entered the cell until the time [Noel] was in handcuffs." (ECF No. 74-3 at 13). During those 45 seconds, Miksich rallied his fellow officers to help extricate Noel from the cell, (ECF No. 74-

4 at 6), restored order after officers began "fighting each other," (*id.*), and directed Campolong "to move along," recognizing that he was "highly agitated" and that his continued presence might provoke further trouble, (*id.*). No reasonable jury could confuse these actions for deliberate indifference toward Noel's Fourteenth Amendment rights.

### c. Inadequate Medical Care

Bumps, scrapes, and scratches are unpleasant, but they are not the sorts of injuries for which people typically seek professional medical treatment, so the delay or denial of such treatment is no affront to the Constitution. The incident at the Altoona Police Department left Noel with "bruises," (ECF No. 72-1 at 3), "a minor scratch," (ECF No. 72-5 at 2), "red marks" on his arms, hands, and face, (ECF No. 72-18 at 3), and perhaps "a split lip," (ECF No. 74-1 ¶ 17). After two hours in a restraint chair, officers transported him to Blair County Prison where a nurse gave him ice and Ibuprofen. (ECF No. 72-7 at 39). That does not constitute deliberate indifference to a serious medical need, so Defendants are entitled to summary judgment on this claim.

Prison officials violate the Eighth Amendment "when they act deliberately indifferent to a prisoner's serious medical needs by intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citation modified). While

acknowledging that the Eighth Amendment represents the "floor," *Hubbard v. Taylor*, 399 F.3d 150, 165 (3d Cir. 2005), and that pretrial detainees are "entitled to greater constitutional protection," *id.* at 167 n.23, the Third Circuit has usually assessed pretrial detainees' claims for inadequate care under "the same standard used to evaluate claims brought under the Eighth Amendment," *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023). *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003). To prevail, then, a pretrial detainee "must show (i) a serious medical need, and (ii) acts or omissions by [] officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. Noel cannot make either showing.

"A medical need is 'serious,' . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). As a general rule, split lips and bruises do not rise to this level. *See Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006); *Bilby v. Hoffman*, No. 3:14-cv-2470, 2016 WL 859672, at *4 (M.D. Pa. Jan. 27, 2016) (collecting cases). And nothing in the record could lead a reasonable jury to conclude that Noel is an exception to the general rule.

Nor does the record permit a finding of deliberate indifference. Noel's behavior after the incident (amiably chatting with the officer watching him), (ECF

17

No. 72-9 at 3), would not have alerted that officer (or anyone else) to the possibility of a serious medical need. "A prison official can be found deliberately indifferent only if the official is 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draws the inference.'" *Tapp v. Proto*, 718 F. Supp. 2d 598, 622 (E.D. Pa. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Noel does not contend that he ever asked for medical treatment prior to receiving it. And Nurse Feathers' "patient note" confirms that Noel suffered only minor injuries, (ECF No. 72-18 at 3), for which he received ice and Ibuprofen, (ECF No. 72-7 at 39). So not only did he not sustain serious injuries, he also failed to behave in a manner that would have put a reasonable officer on notice of *possible* serious injuries. (*See* ECF No. 75-4 at 01:00–04:20). His claim for inadequate medical care, thus, fails.

### d. Restraint Chair

The Third Circuit analyzes placement in a restraint chair "under the Supreme Court's excessive force . . . jurisprudence." *Young v. Martin*, 801 F.3d 172, 178 (3d Cir. 2015). As applied to pretrial detainees, that jurisprudence requires an assessment of "the reasonableness of the force used" to determine whether it amounts to punishment. *Kingsley*, 576 U.S. at 397. When it comes to mechanical restraints, the Supreme Court has held that "(1) where the inmate had already been subdued, handcuffed, and placed in leg irons, and (2) there was a clear lack of an emergency

situation such that any safety concerns had long since abated, then (3) subjecting the inmate to substantial risk of physical harm and unnecessary pain serves no penological justification." *Young*, 801 F.3d at 180 (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (citation modified)). Though these factors arose in the context of a prisoner's Eighth Amendment claim, the Third Circuit has applied them to pretrial detainees. *See Stringer v. Cnty. of Bucks*, 141 F.4th 76, 89 (3d Cir. 2025) (citing to *Young* and evaluating whether the pretrial detainee alleging a violation of her Fourteenth Amendment rights posed a threat to herself or others at the time she was placed in a restraint chair).

But, to reiterate, "pretrial detainees . . . cannot be punished at all." *Jacobs*, 8 F.4th at 194. That complicates the analogy to the *Hope* factors because those factors turn on the "penological justification" (or lack thereof) for "subjecting [an] inmate to substantial risk of physical harm and unnecessary pain." *Young*, 801 F.3d at 180. But there is *no* justification for punishing a pretrial detainee, regardless of whether the punishment includes a "substantial risk of physical harm and unnecessary pain." *See Younger v. Gross*, No. 20-878, 2023 WL 2433363, at *13 n.15 (W.D. Pa. Mar. 9, 2023) (noting that the *Hope* test cited in *Young* "arises out of the Eighth Amendment 'cruel and unusual punishment' context, which is a more difficult standard for a convicted prisoner to meet than the Fourteenth Amendment standards protecting pretrial detainees . . . against being 'punished'"). That raises the question: must a

19

pretrial detainee prove the absence of "penological justification" when raising a restraint claim under the Fourteenth Amendment? Or is it sufficient to show that he had been subdued, safety concerns had abated, and he was nevertheless strapped to a chair (*i.e.*, punished)?

The distinction matters because Noel has not established that his placement in the restraint chair caused or risked substantial physical harm or unnecessary pain. So to the extent that *Hope* maps neatly onto a pretrial detainee's restraint claim, Defendants are entitled to summary judgment. On the other hand, a reasonable jury could conclude that officers subdued Noel prior to placing him in the restraint chair and that no exigent circumstances warranted such restraint (a prison break this was not). The caselaw leaves open whether those facts, alone, can prove that officers subjected Noel to punishment in contravention of the Fourteenth Amendment's Due Process Clause. That uncertainty, ironically enough, brings clarity. The dearth of applicable caselaw makes this one of those situations that exists at the "sometimes hazy border between excessive and acceptable force." *Couden*, 446 F.3d at 492 (citation modified). As a result, even if placing Noel in a restraint chair violated his Fourteenth Amendment right to due process, that right was not "clearly established" at the time, so Defendants are entitled to qualified immunity.

### e. Assault and Battery

As it relates to Noel's state-law assault and battery claims, Defendants essentially reprise their *Heck v. Humphrey* and issue preclusion arguments. Both arguments fail for the reasons previously discussed. A jury could find Defendants liable of assault and battery without invalidating Noel's aggravated assault conviction. And issue preclusion only prevents Noel from denying that he assaulted Officer Campolong. It does not determine, one way or another, whether Campolong also assaulted Noel.

## V.    Motion to Strike

In response to Defendants' motion for summary judgment, Noel filed what he titled "Plaintiffs' Motion In Opposition to Defendants' Motion for Summary Judgment." (ECF No. 74). Defendants countered with a motion to strike and clarify. (ECF No. 76). The motion asks "that the Court enter an order construing [Noel's] filing . . . as a brief opposing Defendants' summary judgment motion." (*Id.* at 1). The Court will oblige; a review of Noel's submission reveals that it is unmistakably an opposition brief, not a new motion.

Alongside his opposition brief, Noel also filed a "Declaration in Opposition to Defendants' Motion of Summary Judgment." (ECF No. 74-1). This document represents Noel's attempt at a concise statement of undisputed facts. Defendants' motion to strike requests that the Court either strike this submission "because it does

not comply with Local Rule 56(B)(1)" or "excuse them from filing a responsive concise statement to" it. (ECF No. 76 at 2–3).

Under Local Rule 56(B)(1), a concise statement of material facts "must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." LCvR 56(B)(1). Noel offered no such citations. But he did attach a series of annotated exhibits from which his proposed facts purportedly derive. (*See* ECF Nos. 74-3, 74-4, 74-5). Because he is *pro se*, the Court has considered those proposed facts to the extent they "specifically contradict Defendant[s'] statement of facts" and "are supported by the record." *Hughes v. Allegheny Cnty. Airport Auth.*, No. 15-221, 2017 WL 2880875, at *2 (W.D. Pa. July 6, 2017). This is consistent with a District Judge's duty "to conduct a full analysis to determine whether granting summary judgment [is] appropriate." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018). And, as Defendants themselves stated, "the Court is aware of Defendants' record evidence supporting their summary judgment motion." (ECF No. 76 at 3). Accordingly, I have what is necessary to discern the undisputed facts in this case. Given that, the Court will not strike Noel's proposed statement of facts but will excuse Defendants from filing a responsive statement. Defendants are assured that the Court will not treat the absence of a responsive statement as an admission to any of Noel's averments.

## ORDER OF COURT

AND NOW, this 23rd day of February, 2026, for the reasons set forth herein, it is hereby ORDERED that Defendant's motion for summary judgment (ECF No. 69) is GRANTED, in part, and DENIED, in part. Summary judgment is granted with respect to Plaintiff's claims alleging failure to intervene, inadequate medical care, and placement in a restraint chair. Summary judgment is denied on Plaintiff's excessive force and state-law assault and battery claims.

It is further ORDERED that Defendants' motion to strike and clarify (ECF No. 76) is granted, in part, and denied, in part. The Court construes Plaintiff's "Motion in Opposition to Defendants' Motion for Summary Judgment" (ECF No. 74) as a brief opposing Defendants' motion for summary judgment. Further, Defendants need not file a responsive concise statement of facts to Plaintiff's statement of facts (ECF No. 74-1). The motion is DENIED in all other respects.

/s/ D. Brooks Smith
D. Brooks Smith
United States Circuit Judge
Sitting by Designation